## BANK OF LAVONIA *v.* BUSH *et al.*

1. Assignments of error which are not referred to in the brief of counsel for plaintiff in error will be treated as abandoned.

2. A written contract, apparently containing the entire agreement of the parties and disclosing no incompleteness, can not be enlarged by parol so as to include additional terms and stipulations, in the absence of fraud or mistake.

3. In taking depositions of certain witnesses there was no compliance with the statute in regard to the time of giving notice to the opposite party, and on appropriate objection it was erroneous to admit the depositions in evidence at the trial of the case.

4. Testimony tending to show that the defendant was induced to sign the note for the stock by false statements of the agent of the payee, in regard to the financial worth of the corporation and the personnel of its directors, was not inadmissible on the ground that the evidence failed to show fraud in the procurement of the note, or that it tended to vary the terms of the written contract.

5. There was no evidence of failure of consideration.    There was evidence of fraud upon the maker, practised by the agent of the payee, which induced execution of the note; but there was no evidence to show notice thereof to the plaintiff at the time it took the note, or to charge it with notice of the fraud.    There being no evidence to authorize it, the judge erred in charging on the subject of failure of consideration and on the subject of fraud perpetrated by the payee upon the maker of the note.

SEPTEMBER 26, 1913.

Complaint.   Before Judge Meadow.   Franklin superior court.
August 31, 1912.

The Bank of Lavonia, a corporation located in Franklin county,
Georgia, instituted an action in the superior court of that county
upon a negotiable promissory note against George F. Bush as prin-
cipal, the Ulaca Company, a corporation of the county of Fulton,
as indorser, and Moorefield & Bishop, a partnership of Fulton
county, as sureties.   The note was dated February 16, 1910, and
due December 16, 1910.   It was signed by Bush as maker, was
payable to the order of the Ulaca Company, and recited the con-
sideration "for value received."   It was alleged in the petition
that the note was indorsed over to the plaintiff on the 5th day of
March, 1910, and that on the same day it was signed by Moore-
field & Bishop as sureties.   No defense was filed except by Bush,
who interposed an answer alleging, among other things, that the
Ulaca Company, through its agent, represented to the defendant
that the company was solvent and had forty or fifty thousand dol-
lars cash in bank with which to do business, did not need the money
from defendant's note, and would not discount it; and that the
agent in the name of the company entered into a contract with de-
fendant that the stock was bought upon the condition that, if de-
fendant was dissatisfied with the stock by the fall of 1910, the note
would be returned to him and the subscription canceled, and further
guaranteed to defendant a dividend of fifteen per cent. on the
stock, and agreed that if the dividend was not paid the note would
be returned and canceled.   Other allegations were: that the agent
represented that designated persons were directors of the company;
that defendant knew the persons to be of high integrity and finan-
cial responsibility, and was influenced thereby to give the note;
that all of the representations so made by the Ulaca Company,
through its agent, were false and fraudulently made to procure the
note, and defendant rescinded the transaction entirely as soon as
he learned that he had been deceived; that the consideration for
which the note had been given entirely failed; and that the plain-
tiff bought the note, at a discount of about thirty-three and one
third per cent. from the face value, from an entire stranger, know-
ing that the defendant was entirely solvent, and having notice
that there were conditions which, if not fulfilled, would relieve de-
fendant of liability, and notice of defendant's defenses to the note

before it purchased the same. A verdict was returned in favor of the defendant. The plaintiff made a motion for a new trial, which contained the usual general grounds, and by amendment others which complained of rulings on the admissibility of evidence and the charge of the court. Other facts will sufficiently appear from the opinion.

*H. H. Chandler* and *J. H. Skelton,* for plaintiff.

*Watkins & Latimer,* G. L. Goode, and W. R. Little, for defendant.

ATKINSON, J. 1. The general grounds are not referred to in the brief of counsel for plaintiff in error, and will be treated as abandoned.

2. The fourth, fifth, and sixth grounds of the amended motion for new trial complain of the admission of the testimony of the defendant, to the effect that the company guaranteed him a specified dividend, and if it was not paid his note would be returned, and that if he became dissatisfied at any time before the note became due, the company would return his note and take up the stock. The objection urged to the admissibility of the testimony was that it was irrelevant and sought to vary the terms expressed in the note. The note was an unconditional promise to pay a specified sum for value received, and apparently expressed the entire agreement between the parties. The testimony would in effect engraft conditions upon it which would materially change the contract, and there was no pleading or evidence that the conditions thus sought to be engrafted were intended to be put in the note and were omitted therefrom through fraud or mistake. It was erroneous, therefore, to admit the evidence. *Smith* v. *Baker,* 137 *Ga.* 298 (72 S. E. 1093) ; *L. & N. R. Co.* v. *Willbanks,* 133 *Ga.* 15 (65 S. E. 86, 24 L. R. A. (N. S.) 374, 17 Ann. Cas. 860).

3. The seventh and eighth grounds complain that the court erred in admitting the depositions of designated witnesses, over objection made by plaintiff's attorney, which was that the depositions were taken without giving the plaintiff the five days notice as required by section 5910 of the Civil Code. The notice was given on the 19th, and it appointed the 23d day of the same month for taking the depositions of witnesses. It thus appears that the statute was not complied with. The plaintiff, being the party notified, did not waive the point, but made objection to the taking of

the depositions at the commencement of the examination of the witnesses, and thereafter on the trial appropriately objected to the testimony.

4. The next three grounds complain of the admission of evidence which tended to show that the Ulaca Company did not have on hand at any time as much money as defendant testified the agents of the company represented to him the company had at the time he took the stock and gave his note. The objection to this testimony was that it was irrelevant. The twelfth ground complains of the court's ruling in allowing the defendant to testify as to the circumstances under which he was induced to give the note. He testified that the agent of the company represented to him: that the company was organized at one hundred thousand dollars capital stock, and had about forty or fifty thousand dollars to do business on, that this amount was in cash in the treasury, that there were several men that he (the agent) wished to become stockholders, including defendant, so that he would get stock scattered throughout north Georgia in order to strengthen the influence of the corporation, and that designated persons were directors; and in response to the question of how much stock any one person could hold, the agent replied to the defendant, "Not over $6,500." As to the effect that the statement that designated persons were stockholders had on the defendant, "that was one of the main points why [he] agreed to take the stock." This evidence was objected to on the ground that it did not show fraud in the procurement of the note, and that it was in conflict with the terms of the note, and sought to vary the contract between the parties. When considered in connection with other evidence in the case, to the effect that the Ulaca Company did not have the amount of money which the agent represented to defendant, and that the persons designated as directors were not such, and that the defendant was induced to take the stock and execute the note on the strength of such representations, the objection to the evidence was not well founded.

5. The thirteenth ground of the amended motion complains that the judge charged the following: "Now, if you believe that the circumstances under which this note was bought by the bank were sufficient to put the bank on notice that these defenses existed, and if you believe that the bank by proper inquiry could have de-

termined, before purchasing the notes, that these defenses did exist, from any of these circumstances, why then, in that event, you go further in your investigation and determine whether or not the signature was procured by fraud, whether or not the maker of this note could defend, under the rules of law, against the payee of the note, the Ulaca Company. If you should determine there was such fraud in the procurement of the signature of this note, practised by the Ulaca Company or its agent, and such failure of consideration as is pleaded, and believe that the other pleas filed in the case are sustained, any one or all of them, then the defendant could resist the payment of this note; and if you believe they were such as to make this note uncollectible against the defendant in the hands of the Ulaca Company, and the Lavonia Bank had notice or could have had it of the existence of this, then you would be authorized to find for the defendant in this case." The criticism upon the charge was that it was unauthorized by the evidence. In that portion of the charge the judge made reference to the plea of failure of consideration. There was no evidence to authorize the charge on failure of consideration. The defendant bought the stock of the corporation, for which he gave the note, and received and retained the stock. It would not constitute a failure of consideration merely because the purchase of the stock was not a good investment. The charge also involved the question raised by the defendant as to fraud of the Ulaca Company perpetrated on defendant, by which he was induced to buy the stock, for which he gave the note. Concerning this question there was evidence to the effect that the agent of the corporation, in making the sale of the stock to the defendant and procuring the note, falsely represented that designated persons of good character and financial standing were directors of the corporation, whose connection with the corporation would give it prestige, and that the agent also made false representations to the effect that the corporation had ample capital with which to conduct its business, and thereby induced the defendant to have faith in the enterprise and subscribe for its stock. Evidence to this effect did not tend merely to contradict the note or vary its terms, but its effect was to go behind the note and show that defendant was induced to make it on account of false representations upon which he acted to his injury. Other evidence was to the effect that the company did not at any time have money on

hand approaching even remotely the amount that it was represented to have, and was never able to declare a dividend, but, after being engaged in business for about a year, was insolvent, and, to avoid being closed up, sold out to a new corporation, taking in payment the stock of such corporation, and the latter company was then declared a bankrupt. It could not be said that there was no evidence of fraud. Fraud of this character, however, would not affect the plaintiff, who was shown to be a purchaser of the note for value before its maturity, unless the plaintiff had notice or was charged with notice of the fraud at the time it became the holder. The burden of showing notice to the plaintiff was on the defendant, the maker of the note. There was no evidence of actual notice. It is contended that the facts shown to have been known by the plaintiff were sufficient to charge notice. The evidence on this subject was to the following effect: Moorefield and Bishop were partners. They, with others, applied for a charter, in the superior court of Fulton county, for the Ulaca Company, and organized thereunder for the manufacture and sale of non-alcoholic drinks. The amount of capital stock authorized to be issued was one hundred thousand dollars. Several agents were sent out to sell stock in the State at large. The defendant resided in Franklin county. He and a number of other citizens were canvassed, and became purchasers of the stock. Notes were generally taken in payment for the stock, and afterwards sold by other agents, including Moorefield and Bishop, wherever they could get them discounted. Moorefield applied to the plaintiff, a bank located in Franklin county, to discount the note of the defendant and a number of notes of other citizens of the county, amounting in the aggregate to about five thousand dollars; and they were all discounted at the same time. This was about the time Moorefield met the cashier of the bank, and was his first transaction with him, though not Bishop's first transaction with that institution. The cashier knew that the Ulaca Company was selling stock in that county through Moorefield and Bishop, and knew the defendant by reputation. The defendant's note was for one thousand dollars, payable to the Ulaca Company one year after date, and was discounted shortly after its execution, according to the testimony of Moorefield, at about twenty-five per cent. from its face value., Moorefield also testified that the cashier knew that the note was given for stock in the Ulaca Company, and

assigned as a reason for charging a high discount that it was "stock paper" and there was risk about it, and "the thing may bust." The cashier testified that before taking any of the notes he tried to telephone each of the several makers, to inquire about their respective notes, and each stated that his note was all right, except the defendant and one other whom he could not reach. He inquired of another to know if the defendant's note was good for one thousand dollars, and was informed that it was. Two days after the notes were discounted the cashier wrote defendant a letter, advising him that the bank held the note which it had bought and paid for, and asked to be advised "if there were any conditions to it." Two days later a reply came, announcing that "there are conditions which I expect to be fulfilled before paying the note." There is nothing in these facts pointing to the fraud of which the defendant complains, namely, fraud of the agent of the Ulaca Company in misrepresenting to the defendant the personnel of the directors of the corporation, and the amount of its cash assets. Representations of this character primarily were in the breast of the original parties, and would remain so unless communicated to others. While the plaintiff's cashier made some inquiry about the notes which he discounted, the responses so far as obtained were favorable to the negotiability of the notes. And whatever weight might be attributed to the circumstance that, two days after discounting defendant's note, the cashier wrote to the defendant to know if there were any conditions to it, the answer received did not suggest that there had been representations as to the personnel of the directorship, or as to the cash of the corporation on hand, or that any representations made by the agent selling the stock were false. The circumstances were insufficient to charge notice of the fraud.

The plaintiff being holder for value, and there being no evidence to show that it took the note with notice of fraud perpetrated on the maker by the agent of the payee, or evidence to charge notice of such fraud, it was error to charge on the subject. Civil Code, §§ 4288, 4291; *Morrison* v. *Hart,* 122 *Ga.* 660 (50 S. E. 471); *Oliver* v. *Miller,* 130 *Ga.* 72 (60 S. E. 254). This ruling disposes also of the 14th and 15th grounds of the motion for new trial, which complain of the charge of fraud, and notice thereof.

*Judgment reversed. All the Justices concur.*